Case 12-5451, U.S.A. v. Rodney Mack Jr. Oral argument, 15 minutes to decide. Mr. Nunnery for the appellate. Morning. Morning. Please report. Ms. Norris, I would like to reserve five minutes for rebuttal. Fine. My name is Jeffrey Nunnery. I'm here on behalf of Rodney B. Mack Jr. This morning I would like to limit my argument to addressing three issues. The first being the issue that the court asked the parties to brief with regard to the potential impact on this case of the United States Supreme Court recent decision. And I think it's pronounced Eileen. At least that's how I say it. And I think that it's clear based on the language in Eileen and the rationale that count three of the indictment in this case needs to be remanded for resentencing because the jury did not find that Mr. Mack brandished a firearm in relation to either the Hobbs Act robbery or the carjacking. Could the district court, if we were to remand resentence to the seven years for that count? I don't believe so. The jury verdict form only indicated that he was in possession of the weapon. I think it's clear from Eileen that you need to have a jury finding that he actually brandished the weapon in order to enhance the sentence from the 60 months to the 84 months of the district court. Is the 60 months then a maximum sentence? It's a mandatory minimum. So why couldn't the district court go higher than the mandatory minimum? Well, I think Eileen very clearly states that any finding of fact that increases the floor of a punishment. Otherwise, without a finding of brandishing, the floor would be 60 months. If you find the additional element, and Eileen says that brandishing is now an element that has to be presented to the jury and found beyond a reasonable doubt. That raises the mandatory floor. Apprendi talked about facts which increase the statutory maximum. But Eileen basically says that a minimum is... But what is the statutory maximum for just the non-brandishing? The using the statutory max? No, I believe it's 20 years. So why couldn't the district judge say, Aha, I know about the Eileen case, but I am going to decide that even though the jury verdict was just without the brandishing element, I'm not going to sentence him to the mandatory minimum, but I'm going to go higher and resentence him to the same seven years. Well, I suppose if the guidelines supported that, that he could do that, but that's not what happened. No, I know, but I'm hypothesizing that we vacate and remand and say, Aha, the Supreme Court has decided the Eileen case. So, district judge, you can't say that he is convicted of brandishing, but you can sentence him on count three to seven years if you want. I believe that that's a possibility. That can always happen. So, in that case, why isn't it harmless error or not plain error under step four of the plain error standard? Well, I think we're trying to look into the future to see what the sentencing court is going to do. All we know is that he found brandishing, and merely on that basis increased the sentence by 24 months. But don't we also know that your client did brandish? Any reasonable juror would find that he did brandish if the jury had been properly respected. That is safe to say, yes. But, Judge Moore, you offered an opinion, which I cited, and I don't know if the court saw my additional citation that I only filed yesterday. We did, yes. But in United States v. Morgan, that was a case where the guidelines were treated as mandatory at the time that Morgan was sentenced. While his case was up on direct appeal, Booker was decided, and even though there was a guideline range within which Mr. Morgan fell, within which he could have been sentenced, you found that it was nevertheless plain error and violated Mr. Morgan's Sixth Amendment rights for the court to treat the guidelines as mandatory, even though they were mandatory at the time that he was sentenced. But you have an evidentiary problem here, you know? I mean, you have to deal with the Nieder case. Are you familiar with that case? It defines harmless error for purposes of an apprendee violation, and it says we ask, quote, whether the record contains evidence that could rationally lead to a contrary finding, i.e., a finding that the omitted element would not be present with respect to the omitted element. So, you know, the question here is whether the record contains evidence that would rationally allow, would allow a jury rationally to find, on the one hand, that your client used or carried the weapon because they so found, but on the other hand, that he did not brandish it. And looking back at the victim's testimony, it seems pretty hard to disaggregate it to where you could say, yeah, I'd see how they found carry, but not necessarily brandish. How, I mean, how do you overcome that? That's a good question. The defendant, I'm trying to remember the counts here, I think it was only count two where he did, where the other robber involved. I think we're talking about count three. We're talking about count three, so that was Mrs. Miller. This is the taller guy and the shorter guy. Right, right, Mrs. Miller. She said she was terrified and he was pointing the gun at her chest the whole time. Right. So, yeah, the question is, do we ignore the error or just find it not to be plain in light of that? Well, the question is whether it's harmless beyond a reasonable doubt, in the sense that beyond a reasonable doubt the jury would have found brandishing on this record. I understand the difficulty posed by the issue. Do you have an argument as to how they might not have? No, I don't. Okay, no, I appreciate your candor on that. I mean, quite clearly he was in possession of the weapon, and the facts are what they are. Yeah. So moving on then, I would also like to address the issues of raised in argument number five, the possible juror taint. This one I think is somewhat problematic. On the last day of the trial, Ms. Norris brought to the judge's attention the fact that two agents involved in the case were having a discussion at lunch at a local eatery, and they were talking about the fact, we don't know what they were talking about, actually. They just said that they were having discussions about the case. One of them turned around, saw a juror sitting there having lunch, and they immediately stopped talking. Ms. Norris brought this fact to the judge's attention, and I think it's troubling that the judge didn't conduct any kind of a hearing to determine... Was a Raymer hearing requested? It was not. Trial counsel did not. But I think, you know, the district judge should have recognized the potential difficulty posed by the situation and inquired into, okay, what were you talking about? But did the trial counsel object to the way the district judge handled this? No, I don't think trial counsel did. Trial counsel was maybe not as active as maybe I would have been. But we just don't know what was being discussed, and we therefore don't know what the juror heard. And it was, the question was posed to the agents, well, do you think that the juror heard you? They said, well, we were talking in a conversational voice, the place wasn't noisy, but no. And the inquiry was just kind of dropped at that point. I mean, how many times have you overheard a conversation and you act like you didn't? I mean, it happens to all of us all the time. Who knows what that juror heard? And I think that that... What relief do you think you qualify for since there was no objection and there was no request for a Raymer hearing? Again, I think we're stuck with a plain error standard of review on that, unfortunately. And doesn't it play in that the judge seemed to feel that it would be more problematic to draw any attention to it or to discuss it further? Do you think that's inapplicable in this setting? I don't think that that much inquiry was made in that regard. I don't think that there was a stated basis as to why he wasn't going to go into it with them. It's more or less, you know, I don't think that he heard us or the juror heard us and the judge said, okay, that's good enough for me. I see I'm running out of time. I would like to segue into the last issue, and that's the 404B evidence. And I think that the argument number five and argument number one, which is the 404B, you know, you didn't have much evidence with respect to the second victim, Crystal Walker. She couldn't identify the defendant either in court or out of court. And so if the juror overheard something that the juror shouldn't have heard and if that played in the discussions, there wasn't a lot of evidence that Mr. Mack was involved in the second grouping of offenses regarding the second victim. So if you look at the juror taint issue in conjunction with the 404B issue, then I think that there is a little bit of a problem. And combining the two, the court might find plain error. And I see that I'm out of time. Thank you. May it please the court. My name is Kelly Norris and I represent the United States of America. Turning first to the Aileen argument that was previously discussed, if the court would forgive my double negative, as this court has indicated, there is no way the jury would not have found Branish in this case. The jury credited clearly the victim's testimony regarding the gun because they convicted this defendant of the 924C counts and the only evidence they had of the 924C counts was the victim's testimony. There was no co-conspirator statements. There was no confession. There was no gun recovered. Well, I mean, I do understand your point. I mean, as a general matter at least, isn't it true that a jury need not credit a witness's testimony in gross in the manner that you're sort of characterizing here? In other words, they might believe certain parts of a witness's testimony but reject other parts. I mean, a jury could do that rationally. And so we don't just say, okay, this was the only witness who testified to this issue. He was found guilty. Therefore, every single word that she said is something that we say the jury accepted. Your Honor, I would agree with that. But as to the testimony about the gun, I do believe that the jury must have credited the victim's testimony because that was the only evidence that there was a gun. The victims couldn't have described the gun to the jury. They couldn't have provided any other evidence unless the gun was brandished. Therefore, the victims wouldn't have known there was a gun unless it was brandished. And therefore, by the jury finding, beyond a reasonable doubt, that this defendant was guilty of the 924C counts, they necessarily credited the victim's testimony as to the firearm in this case. Would it be brandished if it were simply in the waistband and the victim saw the gun? Would that constitute brandishing? Yes, Your Honor. I believe if it's displayed even a part of or if the victim is made aware of even if they didn't see the gun, that's considered brandish. But isn't brandish, and you quote the definition in your letter, essentially a specific intent element? I mean, as you quote it, the term brandish means with respect to a firearm to display all or part of the firearm or otherwise make the presence of the firearm known to another person in order to intimidate that person, regardless of whether it's directly visible to that person. Isn't that a fair characterization? Absolutely, Your Honor. And so it's not just the fact that the victim could see it or its location, but the jury has to find that the defendant had a particular reason in his mind to do this, and that can make it a little tougher for you with a neater analysis, I would think. But I think quite necessarily with the facts that are described and what happened in this case, there's no reason that the defendant would be displaying a firearm other than to intimidate these victims to give them their keys to their car so he could carjack them and also the other incidentals that they had so he could rob them and commit the Hobbs Act robbery. It just would seem completely illogical almost to conclude otherwise. Why would this defendant be brandishing a firearm in this circumstance? Well, assume that we didn't agree with you on that. Your opponent is arguing that it would constitute plain error and that we should vacate and remand for resentencing. Why aren't the Booker remand cases involving plain error relevant here? Well, Your Honor, I think more on point would be the post-Apprendi cases because that line of cases is so analogous to the issue that we have here, which is raising the statutory maximum as opposed to raising a minimum mandatory. So the post-Apprendi line of cases seem directly on point with what we're dealing with here. And in those cases, under a plain error analysis, you can find harmless error if it doesn't affect the fairness, integrity, or public reputation of the judicial proceedings. Here, again, there's no way that jury would not have found brandish and therefore it's harmless error in this case. But I'm saying assume that we disagree with you on your premise. Why shouldn't the district court have the opportunity to decide whether or not to sentence between the five-year mandatory minimum and the 20-year statutory maximum? Because, I guess, once again, there's no error here to require— it's harmless error, I guess I should say. So there's no requirement for a remand. The victim testimony was clearly credited by the jury. The defendant didn't ever take issue with the fact that brandishing was found. He never argued anything other than about brandishing. So it was uncontroverted. The evidence about it was overwhelming. And therefore, there's no need for a remand in this case. Well, uncontroverted. How is it uncontroverted? I mean, he disputed the whole case. I mean, he didn't testify, but he didn't concede, you know, that he had—yeah, I did it to intimidate. Well, his only defense advance, both at trial and at sentencing, was it wasn't me. He never said anything about, well, if you find that there was a gun involved, it wasn't brandished. There was no argument to the contrary. It was just a, it wasn't me, argument. So it never was controverted, even at sentencing. And this defendant was on notice, because what's a bit different from the post-Apprendi line of cases is that in this case, brandish was charged in the indictment. So the defendant was on notice about the brandish. He knew that it made a difference in his sentencing. I mean, he controverted everything, I think it's fair to say. But in any event, I mean, the test is what it is. At least as I read the record, and please correct me if you think otherwise, not even the judge made a brandishing finding here. Nobody made a brandishing. I mean, this guy got an extra two-year mandatory minimum, and nobody found the fact. Nobody did. I mean, does that matter? Does that, does that remove the predicate for harmless error review in the manner that the court and the dissent in Nieder discuss? Your Honor, I think that implicitly the judge did make a brandishing finding. I know that the record isn't clear as to a specific finding. But at the time, and based on all the evidence in this case, and the judge sat through this trial, it was quite clear, and I think the record's clear, that everybody kind of took it for granted that brandishing... We're getting a long way from the Sixth Amendment, right? I mean, I understand your point, practically, but... Yeah, well, I don't know. I'm not sure what to do with that. Could you address the 404B issue? Yes, Your Honor. Your Honor, the Rule 404B evidence was properly admitted in this case. The defendant has addressed a couple of arguments, subparts to the 404B evidence that he disagrees with. The first is whether the other act occurred, and quite frankly because he didn't contest that at the district court level, he forfeits that argument here. Well, is it enough that at trial he... Can you use his own trial testimony against him? I'm skipping from your argument forward into looking at what the court did. We have someone who testifies. Yes, I'm the person who pled guilty to that, but I didn't commit that offense. Tell me how that's good enough to get you where you need to go. Your Honor, I believe... So you're referencing the defendant's testimony, that he said, yes, I pled guilty to disorderly conduct, but it was a plea deal. It doesn't change the fact that this other act occurred and that there is a... He swore under oath that he committed this act in a judicial proceeding in Georgia. The fact that he's now here in court flandering and testifying otherwise as to his reasons for doing so doesn't change the fact that he swore under oath in Georgia that he did commit these acts. It is relevant that he testified about that underlying conviction, first to show that he... Since the court didn't make a finding that the robbery actually occurred? Did the court here make a finding that the robbery in Georgia actually occurred? It did not. It found... The United States provided a notice of Rule 404B evidence and provided the transcript. Defense counsel did not file anything in response, and when the evidence came up at trial, the district court did have the benefit already of the transcript as well as, I believe, it's a nine-page Rule 404B notice from the government regarding its arguments. When the bench conference occurred before the Rule 404B evidence was admitted, but when it was first brought up at trial, the defense attorney provided no compelling reason not to admit it, and therefore the district court doesn't need to make a finding on the record before it submits the evidence to the jury as found in Huddleston. And so long as the underlying act is supported by greater than unsubstantial... I'm sorry, unsubstantiated innuendo, it should be admitted. Quite clearly, in this case, it was supported by more than unsubstantiated innuendo, and therefore the district court judge was correct in admitting it. Also, once again, the defense counsel didn't ask for some on-the-record finding, didn't contest whether it was a defendant, didn't contest at the time that he didn't commit these acts when he had ample opportunity to do so. So a failure to raise this argument shouldn't hurt the district judge in the procedure he chose to follow regarding the admittance of the Rule 404B evidence. Well, assuming that, then tell me how the evidence from Georgia is indicative of his identity. Your Honor, there's a lot of things that show it's the same modus operandi. First, the defendant was with an accomplice, and actually it was a shorter and a taller person, it seems like, and the description of the hair actually matches the description from the victim. That's a little bit problematic to say it's a modus operandi to go find a tall guy to walk with you to do your robberies. Correct, Your Honor, and if I could go on to some other similarities, that's fair. But the robber's description matches some other cases that were cited in our brief, so that was just one factor that I'm pointing to as to how it's the same. In the Georgia case, in the Knoxville robbery and carjacking spree, a gun was threatened. In both cases, the victim handed over a cell phone as well as a food item. Obviously in Georgia it was hot wings, and in Knoxville it was pizzas. You're not finding this a little thin? Well, Your Honor, I'm concerned. Well, something that's interesting though is look at the goal of the robber in the Georgia case as well as the Knoxville cases. It's to get some food and a cell phone because in each of these carjackings in the Knoxville cases, the defendant abandoned the car, but for after the first robbery where the vehicle was found in his apartment complex. After that each time, he abandoned the car, he abandoned the clothing. All he kept was the food and the cell phone. It seems like the goal, as minimal as it may be,  He's walking down the sidewalk looking for somebody eating? Apparently he's looking for food and looking for cell phones, and that's what he got in both cases. It was astonishing that when the United States read this transcript from the Georgia conviction, it was like, wow, he's once again using guns to steal a cell phone and food from people. He's got an accomplice. He maybe upgraded his plan a bit when he came up to Knoxville and started doing it up in Knoxville, but there are clear similarities. There's a clear difference in the carjacking in the three cases that we have before us, whereas the Georgia case was not a carjacking. That is correct, Your Honor. This court has held that the prior bad acts do not have to be similar in every respect, and so that is correct. That is a dissimilarity between the two. But this court has overwhelmingly approved of the admittance of Rule 404B evidence if it is probative of identity, which was the issue, the sole issue in this case. That's all he contested. He talked about nothing else, and that was even conceded in the appellant's brief. So therefore, the United States does believe that identity was the issue, this evidence was probative of it, and therefore it was properly admitted under Rule 404B. So, I mean, your argument is that the fact that someone with the same name in an adjoining state committed somewhat similar robberies tends to show that this person with that name committed these charged robberies. Well, it's not about propensity, Your Honor. No, I know. I didn't mean that to be a propensity. No, I'm just trying to understand your identity theory. Yes, Your Honor. So if it's the same modus operandi as this court held in Hopper and Perry, which are cases cited in our brief, that goes to identity as to who committed the crime. Here, the United States asserts that the same modus operandi was employed by the robber in Georgia, who was the defendant, as well as the robber in Knoxville, who was, again, the defendant. And therefore, it is probative of identity. So the second part of the test under 403 is, is it unfairly prejudicial? Why isn't it unfairly prejudicial? Well, Your Honor, and I would like to highlight the word unfairly. Obviously, it is prejudicial, but it is not unfairly prejudicial, and mostly because there was a limiting instruction twice given as consistent with this court's pattern jury instructions. That instruction was requested by the government, and the defendant pled actually, kind of showing that it was not as prejudicial. He pled to a lesser crime, and it was a misdemeanor. So it's not like the proof brought in was a crime of a murder or something like that. It was disorderly conduct was the conviction. I see my time has expired, Your Honors. I just have one more question. Yes, Your Honor. I guess I'm back to the beginning question. If we did consider this error, if we considered the admittance error, then I'm back to my concern that how do we determine whether his substantial rights were violated in this erroneous admittance if the only other testimony there is that, yes, I am the person who pled to the Georgia crime? Your Honor, if this court views the admittance of the Rule 404B as error, it would be harmless error, because the evidence against this defendant was overwhelming, and the defendant needs to show it would have made a difference in the outcome. So if there's overwhelming evidence as provided by this court, then it is just harmless error, and there's no need to go further. The victim for count three identified him in court. That's correct, Your Honor. What about the other two victims? I want to talk about incidents. So the first incident, second incident, third incident. The victim from the first incident picked him out of a photo lineup and identified him in court. The victim from the second incident narrowed it down to two people of a six-person lineup and said, if you combine these two, it would be him, could not identify him in court. There was no question asked as to whether she identified him in court, so she did not. The third victim picked him out of a photograph lineup and also identified him in court. So what's the overwhelming evidence in the second incident? So first of all, the person that the second victim picked out, she picked out two people, one of whom was the defendant. There were two cell phones recovered from this defendant on the date of his arrest, which was, I believe, 18 hours after the third robbery occurred. The first cell phone, so the first victim's cell phone and the third victim's cell phone were found on this defendant. The first victim's cell phone number was used to call in the pizza order for the second robbery. The second victim's cell phone number was used to call in the third victim's robbery. So it shows that necessarily this robber had that second victim's phone and also called in. Or the person he said he bought it from. I mean, his excuse was, I bought it from a chronic. I bought it this morning so that somebody else could have robbed it and called in those orders. And then I get both the telephones doesn't mean I did it. That was his story, Your Honor, but that was also discredited on cross-examination because it was shown that phone calls that he necessarily had to have made before the chronic could have sold the third victim's cell phone to him because that third robbery happened 18 hours before he was arrested. So there was a limited time window as to when he could have got that third victim's cell phone. There were phone numbers dialed on the first victim's cell phone that necessarily he had to have dialed. So that was all discredited. It was his story, of course. That was his testimony. But it was all discredited, Your Honor. Thank you very much. Thank you, Your Honor. Thanks. I'll say this somewhat tongue-in-cheek. The overwhelming evidence as to count two was the robbery of the individual in Georgia of the wings and the juror taint, the discussion. That's what influenced the count. Well, why wasn't, you know, the cell phone evidence? And, I mean, didn't they find one of the stolen cars at his apartment complex, too? Right, with respect to victim number one, the first grouping of offenses in the indictment. And with respect to victim number three, victim number one's cell phone and victim number three's cell phone were found on the defendant at the time of his arrest. But Crystal Walker, the woman who could not identify the defendant, her cell phone, second victim, was not found in his possession. And as you pointed out, Judge Stranch, the defendant said, hey, I just bought the phone that morning. I bought it from a chronic. This is what people do, apparently. They steal cell phones and they sell them. That's a pretty remarkable coincidence that it happens twice, right? I mean, he uses, and I think Ms. Kelly just pointed it out, I mean, he uses the cell phone from, I think it was the first robbery to make the second pizza order, and then the second cell phone to make the third. Right. So, I mean, that's a pretty remarkable thing to have happen twice in a row, if he's just buying it off some random guy in the street. It's remarkable, but it's not overwhelming. Well, I guess. Okay. Well, now I understand that's your argument. But isn't a little bit of your problem that you argue in your brief that there's no need for that 404B evidence because the other evidence in the case was sufficiently identifying? Well. And if you do that, don't you have a problem with harmless error? No, I don't think so. The question is, was there other evidence available to the government without resorting to this remote and very dissimilar, if you ask me. I mean, there were a couple of similarities, but what was dissimilar, there were more dissimilarities than there were similarities with respect to the Georgia incident. But let's assume we agree with that. How do you get around harmless error? Well, again, you have to look at also the juror-taint issue in conjunction with this. We don't know what happened there. You have to look at those two errors in combination, I think, in order to arrive at a fair determination as to whether the 404B evidence was properly admitted. Who knows what the agents were talking about? Maybe they were talking about that specific incident. If the Georgia incident was dissimilar, as you just have said, why is it so harmful that it was introduced, especially given a limiting instruction by the district judge, that it could only be used for identity purposes? Well, because it suggests propensity, and I don't read that limiting instruction the way that the government reads it. But it also was evidence of a misdemeanor? Well, it was played down to a misdemeanor. It was actually charged as a much more serious offense. It was a robbery, and there was an allegation that he had a gun, although it wasn't brandished. Can the jury be considering the allegations as opposed to the guilty plea in that case? Yeah. The limiting instruction itself suggests propensity. I read that limiting instruction as not limiting at all. Isn't it the Sixth Circuit pattern jury instruction? Well, if it is, I think it ought to be changed. There's a much better instruction that we suggested in my brief. But you didn't. I know you weren't trial counsel. I was not trial counsel. My assumption is that the pattern jury instruction was used, but you can correct me if I'm wrong. No, I think you're right. But it suggests propensity, really. We could do better than that. We can all do better than that. So I guess the problem is the evidence is probative of identity, okay? But you don't pass the second and third tiers of the test. The first review for clear error that the other act took place. How do we know? Of course, he testified to it, but that's after the cat's already out of the bag. If you don't testify to it, if you don't address it, you're giving it more credence. I mean, the door was already open. You had to confront it. Had that door not been open, the defendant would not have presented, I mean, I would imagine not have presented any testimony with respect to that Georgia incident. Why would you do that? I mean, you're shooting yourself in the foot. And then, Judge Moore, your question. Okay, it's probative, but is the probative value substantially outweighed by its prejudicial effect? Unfair. It has to be unfair. And I think that it is unfair to try to bootstrap these offenses to an incident that takes place at another state which is so dissimilar. All it does is suggest propensity. And so you have a weak evidence with respect to count two, and did it contribute to that? Probably. And I just want to go back, Judge Ketledge, to what you brought up with respect to the harmless error on the Alene issue. Look, this guy got a lot of time. Okay, could the district judge have sentenced him to the seven years without the brandishing finding? Let's remember that there was no finding by anyone, as you pointed out. So that's problematic. But then you cut to the question of, well, would he have done that? Would the district judge have given him seven years? This guy is looking at 64 and a quarter years. He's a young man. What's the difference between 60 and 84 months in the sentencing judge's mind at that point in time? He gave him the minimum that he could have given him on those counts where he had the discretion. So if there were resentencing, you're saying it's likely the district judge would resentence to the 60-month minimum? Yeah, I think so. Yeah, he caught a lot of time. And your red light is on. Oh, thank you. Thank you. Thanks. Thank you for your argument, and I understand that you're representing your client pursuant to the Criminal Justice Act. I want to thank you for your service to your client and to the court. Thank you both. The case will be submitted with the court call. The next case, please.